```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CLARENDON NATIONAL INSURANCE
COMPANY,                                                    :

                         Plaintiff,         :      REPORT AND RECOMMENDATION

               -against-                    :         03 Civ. 7966 (LAP)(KNF)

COMPUPLAN, LLC and BRUCE D. ULER,           :

                         Defendants.        :
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LORETTA A. PRESKA, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

In this breach of contract action, plaintiff, Clarendon National Insurance Company ("Clarendon"), made an application for a default judgment due to the defendants' failure to participate in discovery. The defendants were ordered to show cause why a default judgment should not be entered. Upon the defendants' failure to respond to that directive, your Honor granted the plaintiff's motion and referred the matter to the undersigned to conduct an inquest and, thereafter, report and recommend the amount of damages, if any, that should be awarded to the plaintiff.

The Court directed the plaintiff to serve and file proposed findings of fact and conclusions of law and an inquest memorandum setting forth its proof of damages, costs of this action, including attorneys' fees, and any applicable interest. The Court also directed the

1

defendants to serve and file any opposing memoranda, affidavits, and exhibits, as well as any alternative findings of fact and conclusions of law they deemed appropriate.  In response, counsel to the defendants filed an affidavit with the court detailing the defendants' failure, during the preceding 18 months, to cooperate with counsel or to respond to counsel's requests that the defendants contact him.  As a consequence of the defendants' failure to respond to or cooperate with their counsel, counsel advised the Court that the plaintiff's inquest submissions would not be opposed.

The plaintiff's submissions aver that it is entitled to recover jointly and severally from the defendants: 1) $675,476.20 in bank fees and related expenses paid improperly by the defendants using the plaintiff's funds; 2) prejudgment interest on the above-noted amount, accruing at the rate of 18 percent per annum; and 3) $210,945.39 in costs and expenses, including attorney's fees.

## II.  BACKGROUND

When a defendant defaults in an action, the plaintiff's factual allegations must be accepted as true, except as they relate to damages.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  In addition, the plaintiff is entitled to all reasonable inferences from the evidence presented.  See Au Bon Pain Corp. v. Artect, Inc., et al., 653 F.2d 61, 65 (2d Cir. 1981).  Based upon the submissions made by the plaintiff, the complaint filed in the instant action, and the Court's review of the entire court file in this action, the following findings of fact are made:

Clarendon is an insurance company and the defendants CompuPlan, LLC ("CompuPlan"), and Bruce D. Uler ("Uler"), a principal and officer of the corporation, served as Clarendon's administrator and fiduciary with respect to certain excess accident and health insurance policies

Clarendon issued to small employers.  CompuPlan also served as the administrator and fiduciary for the health benefit trusts sponsored by these small employers (hereinafter "Program Business") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq.  Uler directed and controlled CompuPlan's business affairs.

Clarendon entered into an Administration Agreement with CompuPlan on June 1, 2001.  Under the terms of that contract, CompuPlan agreed, among other things, to: (a) bind coverage; (b) issue and endorse insurance policies on Clarendon's behalf; (c) remit premiums on the policies; (d) act as a fiduciary with respect to trust funds; and (e) indemnify Clarendon for any expenses it incurred due either to CompuPlan's or its subcontractors' failure to comply with applicable rules and requirements.  In addition, CompuPlan agreed to indemnify Clarendon for any damages it suffered and any expenses it incurred arising out of CompuPlan's or its subcontractors' failure to discharge their obligations under the agreement.

In 2002, Clarendon commenced an action against CompuPlan and Uler to enforce its rights under the Administration Agreement and to gain control of the run-off of the Program Business.  On October 18, 2002, the parties entered into a stipulation through which they terminated CompuPlan's right to act as Clarendon's agent for the Program Business and adopted guidelines that would govern the parties' conduct until the relevant excess insurance policies expired.  Through the stipulation, CompuPlan agreed, among other things, to: (1) provide Clarendon with copies of all records pertaining to the insurance policies and corresponding policy claims; (2)  account to Clarendon for all its activities; (3) comply with Clarendon's audit of CompuPlan's books and records, and those of its subcontractors; and (4) refrain from interfering with Clarendon's direct communications with CompuPlan's subcontractors regarding the run-off

of the Program Business.

Under the Program Business, CompuPlan or its employer trusts were required to pay for certain operational costs and expenses, including bank fees for the accounts established by the Program Business.  However, CompuPlan deducted the bank fees and expenses from accounts maintained by Clarendon. CompuPlan's failure to comply with the provisions of the parties' stipulation and the Administration Agreement impaired Clarendon's ability to comply with regulatory requirements and the contractual obligations it had to reinsurers.

### III.  CONCLUSIONS OF LAW

A default judgment in an action establishes liability, but is not a concession of damages. Cappetta v. Lippman, 913 F. Supp. 302, 304 (S.D.N.Y. 1996) (citing Flaks v. Koegel, 504 F.2d 702, 707 [2d Cir. 1974]).  Damages must be established by the plaintiff in a post-default inquest. Id.  In conducting an inquest, the court need not hold a hearing "as long as it ensured that there was a basis for the damages specified in the default judgment."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 [2d Cir. 1989]).  The court may rely on affidavits or documentary evidence in evaluating the fairness of the sum requested.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).

As noted above, Clarendon seeks to recover damages, interest, costs and attorney's fees from the defendants for their breach of the Administration Agreement and the stipulation.

*1. Damages for Breach of Contract Under New York Law[1]*

The proper measure of damages for breach of contract is the amount necessary to put the plaintiff in as good a position as he would have been if the defendant had not breached the contract.  See Western Geophysical Co. of America, Inc. v. Bolt Associates, Inc. 584 F.2d 1164, 1172 (2d Cir. 1978); Goodstein Constr. Corp. v. City of New York, 80 N.Y.2d 366, 373-374, 590 N.Y.S.2d 425, 429 (1992).

The plaintiff's complaint and inquest submissions establish that the parties entered into the Administration Agreement effective June 1, 2001.  That agreement provided that CompuPlan would act as Clarendon's administrator and fiduciary in producing and administering Clarendon's excess insurance policies and any renewals of those policies.  The parties attached to the Administration Agreement a document styled "Guarantee of Payment of Trust Funds" ("Guarantee").  That document required that CompuPlan's employees or representatives, who control the administrator's accounts containing the trust funds, guarantee payment of those trust funds.[2]  Section 4.4 of the parties' Administration Agreement which is entitled "Recovery of Expenses in the Event of Breach," provides, in pertinent part, the following:

> In addition to all other rights and remedies of the Company [Clarendon] under this Agreement and at law, the Company shall be entitled to immediate payment or reimbursement from the Administrator [CompuPlan] for all Expenses (as later defined) incurred or paid by the Company by reason of the Administrator's breach or non-performance of any obligation on its part to be observed or performed under this Agreement. . . . The term "Expenses" as used in this Agreement shall include, but shall not be limited to, losses, costs, charges, fines, penalties, and the following reasonable and

---

[1] The parties agreed to apply New York law to any dispute arising under their contract(s).  See Administration Agreement § 8.6; Guarantee of Payment of Trust Funds § 4; and Stipulation § 28(g).

[2] See Administration Agreement § 8 (b) and Schedule 5 to the Guarantee.

necessary expenses: legal, accounting, data processing, file retrieval, software, clerical help, professional services, travel, and all internal expenses of the Company related to the business covered by this Agreement.

The plaintiff's inquest submissions include an affidavit from Andrew Klivan ("Klivan"), a certified public accountant, whom the plaintiff engaged to perform a forensic accounting analysis to determine the amount of damages Clarendon suffered. In preparing that analysis, Klivan reviewed the Administration Agreement, including the Guarantee, as well as books, records, data and documents related to the disputed insurance program that was under the control of CompuPlan and its subcontractors. In addition, Klivan examined CompuPlan and Clarendon's accounting and bank records for the period 2000-2003. Based upon the plaintiff's submissions, the Court finds that Clarendon has established that CompuPlan used $675,476.20, improperly, that was provided by Clarendon to fund individual employer trust accounts. The trust accounts were maintained at two banks for the purpose of paying bank fees for which the defendants were liable pursuant to the parties' agreement and stipulation. The Court finds further that, as a consequence of CompuPlan's conduct, Clarendon is entitled to recover $675,476.20, the damages it suffered.

*2. Prejudgment Interest*

The plaintiff has requested that the court award it prejudgment interest. According to the plaintiff, prejudgment interest should accrue at the rate of 18 percent per annum, pursuant to section 4.4 of the Administration Agreement. The relevant provision of section 4.4 of the parties' agreement states the following:

> Interest at the rate of the lesser of (i) 18% per annum or (ii) the highest rate of interest permitted by applicable law, shall accrue with respect to any Expenses remaining unpaid for thirty (30) days after presentation of such statement until payment in full of the Expenses with accrued interest.

Section 4.4 of the parties' agreement requires the administrator, in this case CompuPlan, to compensate the plaintiff for all expenses "immediately upon receipt of a written statement setting forth" the expenses.

In the case at bar, the Klivan affidavit is a written statement of the expenses the plaintiff seeks to recover from the defendants. That affidavit was served on the defendants on April 3, 2006. The record evidence does not indicate that any other "written statement" of the plaintiff's expenses was presented to the defendants. Therefore, prejudgment interest began to accrue 30 days after April 3, 2006, which is May 3, 2006. See Saratoga Spa & Bath v. Beeche Systems Corp., 230 A.D.2d 326, 333, 656 N.Y.S.2d 787, 791 (App. Div. 3d Dep't. 1997); New York Civil Practice Law and Rules ("CPLR") § 5001(b). Under New York law, which governs this case, the prejudgment interest cannot exceed the statutory rate of nine per centum per annum unless the parties have agreed to a higher rate of interest. See Levy, King & White Adver., Inc. v. Gallery of Homes, Inc., 177 A.D.2d 967, 968, 577 N.Y.S.2d 1012, 1013 (App. Div. 4th Dep't. 1991).

Here, the parties agreed that the lesser of 18 percent or the statutory nine percent interest rate would accrue on any expenses that remained unpaid 30 days after a written statement of expenses was presented by the plaintiff to the defendant. Consequently, the plaintiff is entitled to an award of prejudgment interest, accruing at the lesser rate of nine percent per annum, commencing May 3, 2006.

*3. Costs*

Section 4.4. of the parties' Administration Agreement provides that, in the event of breach of its contractual obligations, CompuPlan will reimburse Clarendon for expenses, including the costs it incurred as a result of the breach. The plaintiff has not identified any costs it incurred in

the prosecution of this action. However, the Court takes judicial notice of the fact that the plaintiff paid a filing fee to the Clerk of Court, in the amount of $150, in order to commence this action. Accordingly, the Court finds that the plaintiff should be awarded $150, the costs it reasonably incurred in prosecuting this action against the defendants.

*4. Attorney's Fees and Expenses*

"Under the general rule in New York, 'attorneys' fees are incidents of litigation and a prevailing party may not collect them from the losing party unless such an award is authorized by agreement between the parties, statute or court rule.'" Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 955 F. Supp. 203, 217 (S.D.N.Y. 1997) (quoting Bourne Co. v. MPL Communications, Inc., 751 F. Supp. 55, 57 [S.D.N.Y. 1990]). However, "the intent to provide for counsel fees as damages for breach of contract must be 'unmistakably clear' in the language of the contract." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20-21 (2d Cir. 1996) (citing Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 367 [1989]).

In the instant case, the express language of the parties' Administration Agreement, specifically section 4.4 quoted above, provides that CompuPlan is obligated to pay the plaintiff's attorney's fees and expenses in the event that CompuPlan breaches that agreement. However, while the plaintiff is entitled to an award of the attorney's fees, pursuant to the parties' agreement, the attorney's fees award must be reasonable.

A party seeking an award of attorney's fees must support the request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work

done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Attorney fee applications that do not contain such supporting data "should normally be disallowed." Id. at 1154. In determining reasonable attorney's fees the courts in the Second Circuit calculate "a loadstar figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (citing Blanchard v. Bergeron, 489 U.S. 87, 94, 109 S. Ct. 939, 945 [1989]).

A reasonable hourly rate for legal services is one consistent with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 n.11(1984). The relevant community for determining the prevailing market rate is "the district in which the court sits." Polk v. New York State Dep't of Correction Servs., 722 F.2d 23, 25 (2d Cir. 1983). Here, the relevant community is the Southern District of New York. In addition, it is permissible for a court to rely upon its own knowledge of private firm hourly rates in deciding what reasonable attorney's fees are in the relevant community. See Miele v. New York State Teamsters Conf. Pens. & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987). The Court has done that here.

The plaintiff is represented in this case by the law firm Felcher Fox & Litner, P.C., located in New York, New York. In support of its demand for attorney's fees, the plaintiff submitted: (a) an affidavit by David L. Fox, Esq., ("Fox"), a partner in the firm; (b) a copy of the law firm's monthly charges for services rendered to Clarendon from September 1, 2003, to February 28, 2006; and (c) the billing worksheets generated for that same period, which detail the date, task, rate,

hours, amount and nature of the charges, including a breakdown of the law firm's expenses related to this litigation.

According to Fox's affidavit, the law firm billed Clarendon at its customary rates. The affidavit also indicates that the attorneys who were assigned by the law firm to work on this matter "have substantial experience litigating complex insurance agency accounting and run-off disputes." However, Fox failed to provide any facts that substantiate this claim. Moreover, Fox neither identified those attorneys by name nor identified positions (partner, associate, counsel) they hold at the law firm. The Court did locate the attorneys' names on law firm letterhead that was submitted as part of an exhibit to the plaintiff's submissions. However, the law firm's letterhead does not identify the positions held by the attorneys employed by the law firm and reveals nothing about each attorney's respective experience.

The experience of each attorney who rendered legal services to the plaintiff, during this litigation, is a factor that the Court must consider in determining the reasonableness of the attorneys' fees the plaintiff incurred. The paucity of information before the Court about the experience level of the plaintiff's attorneys and their respective positions at the law firm is an obstacle to understanding whether the rates billed for the various hours expended by the attorneys who were assigned to work on this matter for the plaintiff were reasonable and appropriate.

The plaintiff contends it is entitled to recover $210,945.39 in attorneys' fees and expenses. The plaintiff's submissions indicate that, for the period September 2003 through February 2006, the following law firm personnel rendered legal services to it at the following hourly rates: Fox

10

($350; $410);[3] Alan B. Leitner ($350; $410); Adam H. Russ ($225; $300); Donna Freireich ($300; $350); Paul J. Robin ($290); and a paralegal ($165).  Although the defendants do not oppose the plaintiff's inquest submissions, their counsel did advise the Court that his law firm billed the defendants at the hourly rate of $225 for the legal services provided by a partner at his law firm.  This contrasts dramatically with the $410 which partners at the plaintiff's law firm billed to it for the legal services provided to the plaintiff during the litigation.

The Court found the data submitted by the plaintiff concerning the attorneys' fees and expenses it incurred irreconcilable.  The plaintiff's submissions do not indicate how the plaintiff arrived at the total of attorneys' fees and expenses it seeks to recoup.  The data also failed to identify what portion of the total sought is allocable to attorneys' fees and what portion represents the plaintiff's expenses.  For example, the law firm's billing sheets indicate that $219.695.41 was billed to the plaintiff.  The billing sheets also indicate that $9,364.67 -- representing 31.73 hours of work -- should not be billed to the plaintiff and, further, that $3,882.31 are the expenses that were incurred by the plaintiff.  However, by subtracting the $9,364.67 that the billing sheets indicate should not be billed to the plaintiff from the total fees billed: $219,695.41, one is left with $210,340.74.  This amount is $614.65 less than the amount requested by the plaintiff through the instant application for its attorneys' fees and expenses.  No explanation for the discrepancy has been provided by the plaintiff.  Furthermore, the plaintiff's submissions indicate that "the aggregate amount of attorneys' fees and related expenses incurred and paid by Clarendon in

---

[3]The hourly rates at which some of the plaintiff's attorneys billed it changed during the course of the litigation.  The original hourly rate and the increased hourly rate are, where applicable, noted above, parenthetically.

connection with the instant case is $210,945.39 as of February 28, 2006." By deducting $3,882.31 (the amount of the plaintiff's expenses), from this amount, $207,063.08 remain. This number should represent the total amount of the plaintiff's attorneys' fees. Based on other data provided by the plaintiff and discussed above, it does not. These arithmetic inconsistencies undermine the plaintiff's claim that the requested attorneys' fees are reasonable and make suspect the amount(s) sought to be recouped by the plaintiff for the attorneys' fees and expenses it incurred in prosecuting this action.

In analyzing an application for attorney's fees and costs, a court must consider the reasonable number of hours expended by counsel to a party during the course of the litigation. In this connection, a court may reduce the number of hours billed by counsel to a party if the billing records submitted to the court do not describe, with sufficient clarity, the nature of the work performed such that the court can assess the reasonableness of that work in the context of the overall litigation and, concomitantly, determine whether the amount billed for the work was reasonable. See Williamsburg Fair Housing Committee v. New York City Housing Authority, No. 76 Civ. 2125, 2005 WL 736146, at *9 (S.D.N.Y. Mar. 31, 2005).

In the case at bar, approximately half the attorneys employed by the law firm engaged by the plaintiff were assigned to represent the plaintiff in this litigation.[4] The law firm's billing records contain a significant number of entries that fail to describe adequately the work performed by law firm personnel. The Court found many of the entries vague. For example, the following

---

[4]Such a large allocation of law firm resources to a breach of contract action raises the issue of overstaffing, a matter the Court may consider in determining whether legal fees are reasonable.

entries appear in the law firm's billing records: "meeting;" "telephone;" "correspondence;" "review and revise;" "legal research;" "draft documents;" "review documents;" and "general."  Where entries in attorney time records do not provide any information about the subject matter of a meeting, telephone call(s), e-mail(s), letter(s), research or a document(s) revised and reviewed, it is impossible to know that the work performed by an attorney is relevant to the pertinent litigation. Furthermore, in the instant case, it is not clear to the Court, from its review of the entries in the pertinent billing records, whether all the entries pertain to work that was performed in connection with this litigation.  The following exemplars are provided: "draft memo to local counsel (J Graves regarding status, timetable of Bodle);" and "review e-memo from J Graves regarding status of Bodle action."  Deficiencies in law firm billing records, such as those noted above, permit a court to reduce the number of hours billed by counsel to a party and, concomitantly, the amount of attorney's fees sought to be awarded.  See Williamsburg Fair Housing Committee, supra.

In light of the deficiencies in the submissions made by the plaintiff in support of its application for an award of the attorneys' fees and expenses it reasonably incurred in prosecuting this action, the Court finds that a 25% reduction in the amounts requested by the plaintiff is appropriate.  See Luciano v. The Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997); N.S.N. Int'l Indus. N.V. v. E.I. DuPont de Nemours & Co., No. 89 Civ. 1692, 1996 WL 154182, at *3 (S.D.N.Y. Apr. 3, 1996).

*5. Post-Judgment Interest*

28 U.S.C. § 1961 informs that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Interest is calculated "from the date of the

13

entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." Id.  Therefore, the plaintiff is entitled to post-judgment interest, at the rate prescribed by the above-noted statute, commencing from the date the default judgment is entered.

### IV.  RECOMMENDATION

For the reasons set forth above, the Court recommends that Clarendon be awarded:

(1) $675,476.20 in damages, for breach of contract, along with pre-judgment interest calculated by the Clerk of Court at the rate of nine percent per year, from May 3, 2006, until the date the default judgment is entered; (2) $150 in costs; (3) $155,297.31 in attorneys' fees ($207,063.08 x 75%);

(4) $2,911.73 in expenses ($3,882.31 x 75%); and (5) post-judgment interest, calculated by the Clerk of Court, commencing from the date the default judgment is entered, in accordance with 28 U.S.C. § 1961.  The Court recommends further that the defendants' liability for the judgment be joint and several.

### V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, United States District Judge, 500 Pearl Street, Room 1320, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 540, New York, New York 10007.  Any requests for an

extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1998); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      December 5, 2006

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Adam Russ, Esq.
Gregory Smith, Esq.

15